**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A PARCEL ADDRESSED TO DYLAN WEISSER BEARING TRACKING NUMBER 9505 5141 0373 3088 9601 71 | No. 1:23-mj-00079-JCN |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Emily Spera, being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1. I am an Inspector with the United States Postal Inspection Service assigned to the Boston Division. I have been a Postal Inspector for nine years. Among my assignments are the investigation of dangerous mail, and prohibited mailings, which includes narcotics and controlled substances. I have been trained in all aspects of investigations relating to the U.S. mails at the Postal Inspection Service Training Academy in Potomac, Maryland. I have also completed investigative courses sponsored by the U.S. Postal Inspection Service which focused upon the detection of controlled substances and proceeds from the sale of controlled substances sent through the U.S. Mails.

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c). As a federal law enforcement officer, I am authorized to execute warrants issued under the authority of the United States.

3. The facts and information contained in this affidavit are based on my personal knowledge and observations, as well of that of other Postal Inspectors and law enforcement officers involved in this and similar investigations, and information gained through my training and experience, all of which I believe to be reliable. Based on this training and experience and

the facts set forth in this affidavit, I submit that there is probable cause to believe that the contraband and evidence of violations of Title 21, United States Code, Section 841, identified in **Attachment B** are presently located within the Priority Mail package identified in **Attachment A**. My affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### ITEM TO BE SEARCHED

4. I seek a warrant to search the item described in **Attachment A**, specifically, a Priority Mail package addressed to "Dylan Weisser, 275 coldbrook road, Hampden, Maine, 04444" purporting to originate from "Justin Diaz, 957 Orchard, Ln Ontario CA 91764." The package bears tracking number of 9505 5141 0373 3088 9601 71. The package is identified hereinafter as "Parcel #2". Parcel #2 is currently located at the United States Postal Service Southern Maine Processing and Distribution Center in Scarborough, Maine.

### DESCRIPTION OF PROPERTY TO BE SEIZED

5. I have probable cause to believe that Parcel #2 may contain the following items of evidence, all of which are evidence of drug offenses set forth in Title 21, United States Code, Section 841, et seq., and/or contraband or other items illegally possessed, and which are seizable pursuant to Federal Rule of Criminal Procedure 41:

    (a) controlled substances, including scheduled drugs;

    (b) United States Currency or other negotiable instruments;

    (c) Packaging materials; and

    (d) Documents, papers, records, correspondence or notes, or other effects, tending to show ownership or dominion and control over Parcel #2 and/or its contents, or

tending to show the identity of the intended recipient(s) of Parcel #2 and/or its contents.

As listed in Attachment B.

## FACTS SUPPORTING PROBABLE CAUSE

6.  On about March 30, 2023, I was conducting a routine search of parcels destined to be delivered in the state of Maine. I identified a Priority Mail package, Parcel #2, addressed to "Dylan Weisser, 275 coldbrook road, Hampden, Maine, 04444" purporting to originate from "Justin Diaz, 957 Orchard, Ln Ontario CA 91764." On March 31, 2023, I physically located and took custody of Parcel #2 at the Southern Maine Processing and Distribution Center in Scarborough, ME 04074.

7.  Parcel #2 is purported to weigh approximately 6 pounds 9.4 ounces and bears $22.80 in postage. Parcel #2 was presented for mailing at the Rancho Cucamonga, CA 91729 post office on March 29, 2023, and the mailer paid for the postage with cash.

8.  I conducted a check of the law enforcement database CLEAR, which has proven reliable in previous investigations, for the return address listed on Parcel #2: "Justin Diaz, 957 Orchard, Ln Ontario CA 91764." The search results returned no individual or business matching that address.

9.  I conducted a search in CLEAR for the addressee, "Dylan Weisser, 275 coldbrook road, Hampden, Maine, 04444." The search results returned an individual with that name at that address, most recently in May of 2022.

10. On April 4, 2023, I transported Parcel #2 to the Portsmouth Post Office in Portsmouth, NH to meet with New Hampshire State Police K9 Handler Trooper Timothy Berky and his narcotics-trained canine partner Granite. I placed Parcel #2 on the floor inside the post

office on the loading dock. The searchable area was a large open space with numerous dock doors and empty postal equipment. The searchable area is only accessible to postal employees and contractors. It is not known to contain any contraband. Five additional packages of similar shape and size were placed in a line on the floor that did not contain contraband. Trooper Berky deployed K9 Granite into the searchable area. Trooper Berky informed me that K9 Granite alerted on one package, which I identified as Parcel #2.

11. On April 6, 2023, I received a report from Trooper Berky detailing the following in summary and in part:

  a. Trooper Berky and K9 Granite were already in the area to be searched as they had just completed a separate package search. K9 Granite began this search off-lead.

  b. K9 Granite began searching with the first package in the line of six packages. As she moved her way from package one down to package six, she sniffed each one. K9 Granite sniffed over all the packages and showed no interest on her first pass. K9 Granite then went back down the line, as she sniffed packages six, five and four again, she showed no interest. As K9 Granite got to package three, Trooper Berky observed her detail the top left seam of the package. Trooper Berky noticed there was as small tear in the top of the package.

  c. K9 Granite began to detail around the tear of package three. K9 Granite seemed more interested in package three than the other packages. K9 Granite left package three briefly and went to package two and one. K9 Granite showed no interest in those packages, and she went directly back to package three.

  d. K9 Granite again detailed the top seam of package three and the tear in the top. She moved around the package quickly and was very focused on package three.

K9 Granite showed no interest in any other package, and it was clear to Trooper Berky that K9 Granite had detected illicit drug odor coming from the package and was attempting to locate the source of the odor.

e. K9 Granite then downed on the package, indicating she had alerted to the third package in the line.

f. Trooper Berky advised that K9 Granite had alerted to the third package in the line which I identified as being Parcel #2, meaning that K9 Granite had indicated to the presence of narcotics within Parcel #2.

12. I understand that Trooper Berky and K9 Granite became a certified narcotics detection team through the NESPAC (New England State Police Administrators Conference) in December of 2018. K9 Granite is certified in the detection of cocaine, heroin, and methamphetamine. K9 Granite is trained to detect narcotic odors in buildings, open outdoor areas, roadways, packages, passenger and commercial vehicles, and human bodies. K9 Granite is trained to give an "alert" when she detects the odor of illicit drugs.

13. Following the alert on Parcel #2 by K9 Granite, I secured Parcel #2 at the Southern Maine Processing and Distribution Center in Scarborough, Maine.

14. Based on my training and experience, I know that distributors of controlled substances often send drugs by way of the U.S. Mail. I am also aware that the distribution of controlled substances generally involves the receipt and/or exchange of U.S. Currency or other negotiable instruments in exchange for those controlled substances. Those engaged in the distribution of such substances by way of the U.S. Mail—either by shipping or receiving packages—may also send U.S. Currency or other negotiable instruments via the U.S. Mail to act

as payment for controlled substances or for the distribution thereof, or to permit the further purchase of additional controlled substances.

15. Based on my training and experience, I know that narcotics traffickers often send their illegal narcotics through the mail from source states, such as California, Arizona, Texas, Nevada, and the U.S. Territory of Puerto Rico. The origin of Parcel #2 is a southern California city east of Los Angeles.

16. Based on my training and experience, people involved in shipping narcotics sometimes seal and prepare parcels in a manner to make detection of illegal narcotics difficult by law enforcement and drug detecting canines. I am aware that controlled substances are typically packed in some form before being placed in a package to be mailed. The materials in which controlled substances are packaged may be used, or intended, to disguise the scent of controlled substances or otherwise to obscure their contents. Such packaging materials may include Styrofoam packing peanuts, tape or other sealing materials, plastic wrap, bubble wrap, fabric softener sheets, fresh coffee grounds, and other materials intended to defeat detection by trained narcotics canines. Such materials may also contain additional evidence identifying the individual or individuals who owned or exercised dominion and control over the contents, such as fingerprints or genetic materials.

17. Based on my training and experience, I am aware that controlled substances sent by way of the U.S. Mail may sometimes be accompanied by documents, papers, records, correspondence, or notes, or other effects which tend to identify the individual or individuals who owned or exercised dominion or control over the package or its contents, or which tend to identify the intended recipient of the package or its contents.

18. Based on my training and experience, I know that individuals shipping controlled substances via the U.S. Mail primarily utilize Priority Mail Express and Priority Mail because of the speed, reliability, and free telephone and internet package tracking service, as well as the perceived minimal chance of detection. Drug traffickers often use fictitious names and/or fictitious return addresses to prevent them from being identified and apprehended by law enforcement. Additionally, it is not uncommon to use legitimate names and legitimate addresses that are not, at the time the package is shipped, associated with each other. Additionally, in the cases where USPS Priority Mail Express and Priority Mail packages containing controlled substances and/or money for the purchase, or proceeds from the sale of, controlled substances have displayed a business or company name or used a business address, it not infrequently proves to be a fictitious business or company, or, in certain cases, a legitimate company whose name or address was being used without the knowledge or authorization of that business.

19. Because Parcel #2 is currently in the possession of the United States Postal Inspection Service and can be searched by federal agents at any time convenient to those agents, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

20. Based upon the information set forth above, and in light of my training and experience, I have probable cause to believe Parcel #2 contains controlled substances and packaging materials, and may contain U.S. Currency or other negotiable instruments and indicia of the identity of the sender(s) and/or intended recipient(s) of Parcel #2, which constitute evidence of one or more violations of Title 21, United States Code, Section 841(a)(1) (distribution of, or possession with intent to distribute, a controlled substance).

_____
Emily Spera
United States Postal Inspector

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date: Apr 11 2023

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title